IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DIANA LYNN GILLESPIE,       )
      )
       Plaintiff,       )       Civil Action No. 08-689
      )       Magistrate Judge Lisa Pupo Lenihan
v.       )
      )
COLONIAL LIFE & ACCIDENT       )       Doc. No. 6
INSURANCE COMPANY,       )
      )
       Defendant.       )
      )

## OPINION

LENIHAN, M. J.

Currently before the Court for disposition is Defendant's Motion to Dismiss pursuant to

Fed.R.Civ.P. 12(b)(6), or in the alternative, Motion to Compel Arbitration[1](Doc. No. 6). Plaintiff

Diana Lynn Gillespie ("Gillespie") filed this action against Defendant Colonial Life & Accident

Insurance Company ("Colonial") to recover damages on the following claims: (1) sexual harassment

and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, *et seq*.

("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, *et seq*.

("PHRA")(Count I); (2) breach of contract (Count II);(3) battery-negligent entrustment (Count III);

and (4) battery-vicarious liability (Count IV). (Compl., Doc No. 1.)

---

[1]Colonial's motion is entitled "Motion to Dismiss pursuant to F.R.C.P. 12(b)(6)" without
any reference to its alternative motion to compel arbitration. However, after hearing oral
argument and reviewing the briefs submitted thereafter, it is clear that Colonial first requests this
court to dismiss Gillespie's complaint, and in the alternative, seeks this Court to order arbitration
of her claims. Hence, this Court will construe Colonial's initial motion as a Motion to Dismiss
pursuant to F.R.C.P. 12(b)(6), and in the alternative, Motion to Compel Arbitration.

For the reasons set forth below, the Court will grant Colonial's Motion to Dismiss to the extent that it seeks to compel arbitration of this matter.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

Colonial is a South Carolina corporation that sells disability, life, supplemental accidental and health insurance in 49 states, including Pennsylvania, through a nationwide sales force of agents. (Compl. at ¶ 2-3.) Colonial maintains an office in Pittsburgh, Pennsylvania. (*Id*. at ¶ 4). On or about January 1, 2005, Gillespie entered into a District General Agent Agreement ("Agreement") with Colonial, and has been affiliated with Colonial since that date. (Compl. at ¶ 7; Doc. No. 7 at 1.)

On or about May 22, 2006, Gillespie alleges that William Leary ("Leary"), a former employee of Colonial who served as a regional vice president, began acting inappropriately in an offensive and sexual manner towards her. (Compl. at ¶ 9.) Gillespie reported Leary's behavior and he was eventually discharged. (*Id*. at ¶ 15). Believing that "Colonial created, permitted, tolerated, and failed to correct or prevent a sexually hostile, intimidating, demeaning, and demoralizing workplace," and that Colonial retaliated against her for her report of Leary's conduct, Gillespie instituted [2] the present action by filing a complaint on May 20, 2008. (Compl. at ¶ 20.)

At issue here is certain language in the Agreement. In particular, the first page of the Agreement states in bold and capitalized letters "**THIS AGREEMENT IS SUBJECT TO ARBITRATION**." (Doc. No. 6-2 at 1). Most critically to the issue at hand, paragraph XIV of the

---

[2] Before instituting the present lawsuit, Gillespie filed a charge with the Equal Employment Opportunity Commission ("EEOC") but was informed by the EEOC that it lacked jurisdiction because of her ostensible status as an independent contractor. (Compl. at ¶ 18.)

Agreement, entitled "Arbitration", states:

> Except as otherwise provided in this section, every claim, controversy or dispute arising out of or related to this agreement, or the breach thereof, which cannot be settled through negotiation shall be settled by binding arbitration administered by the American Arbitration Association (AAA) pursuant to the AAA's Commercial Arbitration Rules. A copy of said Commercial Arbitration Rules, as well as forms to demand arbitration thereunder, may be obtained from the American Arbitration Association. In the event a party initiates a lawsuit in court concerning an arbitrable claim, controversy or dispute such party shall be liable to the other party for the costs, including attorney fees, that the other party incurs to obtain an order from the court to stay or dismiss the lawsuit or otherwise compel arbitration. Arbitration hereunder must be demanded within the relevant statute of limitations applicable to the claim, controversy or dispute . . . . However, except as provided elsewhere in the Agreement, each party shall be responsible for its own attorney's fees incurred during the course of arbitration, as well as the costs of any witnesses and other evidence such party produces or causes to be produced.

(Doc. 6-2 at 11-12.)

On July 29, 2008, Colonial filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, Motion to Compel Arbitration. (Doc. No. 6.) Subsequently, on August 19, 2008, Gillespie filed her Brief in Opposition to [Colonial's] Motion to Dismiss. (Doc. No. 10.) On August 29, 2008, Colonial filed its Reply to Gillespie's response. (Doc. No. 12.) The Court held oral argument on the pending Motion to Dismiss on January 5, 2009. (Doc. No. 13.) Thereafter, on January 26, 2009, Colonial filed its Brief in Response to Questions Raised by the Court. (Doc. No. 14.) On January 28, 2009, Gillespie filed her Supplemental Brief addressing the same questions raised by the Court during oral argument. (Doc. No. 15.) Thus, the Motion has been fully briefed, responded to, argued, and is therefore ripe for disposition.

## II.     STANDARD AND APPLICABLE LAW FOR MOTION TO COMPEL ARBITRATION

Arbitration may be compelled only where "there is no genuine issue of fact concerning the formation of the agreement" to arbitrate. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, — F.3d —, 2009 WL 750415, at *1 (3d Cir. Mar. 24, 2009)(citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). "In making this determination, the party opposing arbitration is entitled to 'the benefit of all reasonable doubts and inferences that may arise.'" *Id*.

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." 9 U.S.C. § 1, *et seq*.; *John Hancock Mutual Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998)(quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)). The FAA applies to written arbitration provisions contained in any contract evidencing a transaction involving interstate or foreign commerce, requiring that agreements to arbitrate be enforceable to the same extent as other contracts. 9 U.S.C. §§ 1, 2; *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). The FAA also provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court . . . for an Order directing that such arbitration proceed in the manner provided in the agreement." 9 U.S.C. § 4. However, before a district court orders arbitration, the FAA requires the court to make the following threshold determinations: (1) whether the parties entered into a valid arbitration agreement, and (2) whether the specific dispute falls within the scope of that agreement. *Olick*, 151 F.3d at 136 (explaining that "district court need only engage in a limited review to ensure that the dispute is arbitrable").

## III.   ANALYSIS

Colonial first argues that Gillespie is not entitled to invoke the provisions of Title VII for a number of procedural reasons, and therefore, her Title VII and state law claims should be dismissed. (Doc. Nos. 7, 14.)  Whether or not Gillespie's Title VII and state law claims are meritorious is of no concern at this juncture.  The Court must first consider the matter of arbitration. Colonial requests that the Court to engage in "piecemeal litigation, and dismiss some of Gillespie's claims, then order arbitration as to the remaining claims."  (Doc. No. 14 at 6.)  However, if the Court determines that such piecemeal litigation is inappropriate, Colonial requests that the entire case be compelled to arbitration.  *Id*.   In response, Gillespie contends that Colonial's Motion to Compel Arbitration should be denied because "Colonial has refused to engage in negotiation which the Agreement requires as a condition precedent to arbitration." (Doc. No. 15 at 2.)  If the Court disagrees, Gillespie argues that only Count II, her breach of contract claim is arbitrable pursuant to the Agreement as the Title VII and the tort claims alleged are not related to the Agreement.  (Doc. No. 15 at 3.)  Finally, Gillespie maintains that the arbitration clause  is unconscionable insofar as it subjects Gillespie to unreasonable expense.  (Doc. No. 15 at 4.)

### A.   Validity of the Arbitration Clause

The first issue to be addressed is whether the arbitration clause is valid.  Gillespie has raised the contract defense of unconscionability arguing that the arbitration provision in the Agreement should be invalidated because it denies Gillespie an affordable forum in which to vindicate her rights.  (Doc. No. 10 at 10.)  Specifically, the arbitration provision provides that the American Arbitration Association ("AAA") is the designated forum.  Gillespie argues that the AAA's filing and administration fees, which Gillespie would have to bear, are unconscionable as they would

exceed $8,000.[3]  (Doc. No. 10 at 10.)

The FAA provides that a written arbitration provision in any contract "evidencing a transaction involving commerce is valid and enforceable, except upon "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[4]  In addition, the FAA favors the enforcement of arbitration agreements, requiring that such agreement be enforced to the same extent as other contracts. *Harris*, 183 F.3d at 178.  The interpretation and construction of arbitration agreements are determined by reference to federal substantive law. *Id*. at 179 (citing *Moses H. Cone*, 460 U.S. at 25, n.32).  However, pursuant to section two of the FAA, federal courts may apply state law "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 685 (1996); *Harris*, 183 F.3d at 179 (citing 9 U.S.C. § 2).  Accordingly, state law is applicable where a party raises contract defenses to invalidate arbitration agreements, such as fraud, duress, or unconscionability. *Id*. at 687; *see also Harris*, 183 F.3d at 179 (citing *Doctor's Assoc.*, 517 U.S. at 687; *Perry v. Thomas*, 482 U.S. 483, 492 (1987)).

According to the choice of law provisions[5] contained in the Agreement at issue, "all

---

[3]According to the AAA schedules, in order for the filing fee to be that high, Plaintiff's claim would have to be between $1 million and $5 million in damages. As Defendant points out, if that is the case, "the $8,000 should not create an insurmountable stumbling block to arbitration." (Doc. No. 14 at 8.)

[4] The parties do not dispute that the contract in this case involves "commerce" as defined in 9 U.S.C. § 1.  Thus, the arbitration clause at issue falls within the scope of the FAA.

[5] Federal courts exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).  Accordingly, this Court must apply Pennsylvania choice of law rules in this case.  "Pennsylvania courts generally honor the intent of contracting parties and enforce choice of law provisions in contracts

questions and issues relating to the validity or performance under this Agreement shall be governed by the laws of South Carolina." (Doc. No. 6-2 at 11.) Thus, the court must apply South Carolina law to determine whether the Agreement is unconscionable. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529 (3d Cir. 2005)(applying choice of law provision to arbitration dispute). Under South Carolina law, unconscionability is "absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them, and no fair honest person would accept them." *Toler's Cove Homeowners Ass'n, Inc. v. Trident Constr. Co., Inc.*, 586 S.E. 2d 581 (S.C. 2003)(citing *Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 472 S.E. 2d 242 (S.C. 1996)).

The terms of the Agreement obligate Gillespie "to binding arbitration administered by the American Arbitration Association (AAA) pursuant to the AAA's Commercial Arbitration Rules." (Doc. No. 6-2 at 11-12.) The issue before this Court is whether the arbitration clause is unconscionable, thereby rendering the agreement to arbitrate unenforceable. Under both federal and South Carolina law, the Court finds that Gillespie has failed to meet her burden of showing the costs of arbitration render the arbitration clause unconscionable.

The Court finds the South Carolina Supreme Court's opinion in *Toler's Cove* instructive. In *Toler's Cove*, the appellant subcontractor argued that the arbitration clause in the contract should be invalidated because the mandatory costs related to arbitration rendered the contract unconscionable. 586 S.E. 2d at 585. Similar to the instant case, the contract in *Toler's Cove* required arbitration under the AAA, with a filing fee of $8,500 and a case service fee of $2,500. *Id.*

---

executed by them." *Id.*

The South Carolina Supreme Court held that "the costs related to the arbitration do not make the arbitration clause unconscionable because they are not so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Id.* In so holding, the South Carolina Supreme Court considered that the appellant would not be responsible for the service fee as it did not initiate the lawsuit and that the case service fee is split between the parties. *Id.* Additionally, the supreme court decided that the appellant, as the party seeking to invalidate the arbitration agreement, had not met its burden of showing the likelihood of incurring such arbitration costs. *Id.* at 586 (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)). Similarly, Gillespie has not adduced sufficient evidence for this Court to conclude that the costs of AAA arbitration are so oppressive that no reasonable person would make them and no fair and honest person would accept them. Even if Gillespie could prove that such costs reach an unconscionable level, she has failed to prove the likelihood that the arbitration would be prohibitively expensive. Accordingly, this Court declines to determine that the arbitration provision is invalid.

The Court's conclusion is further buttressed by decisions in this district and in the court of appeals in this circuit. The district court's opinion in *Spinetti v. Service Corp. Int'l.*, 240 F.Supp.2d 350 (W.D.Pa. 2001)("*Spinetti I")*, which was affirmed by the court of appeals and provides greater detail as to the facts, is instructive.[6] The district court in *Spinetti I* was confronted with an agreement that contained the following clauses: (1) "employment related disputes will be resolved by arbitration; (2) each party may retain legal counsel and shall pay its own costs and attorneys'

---

[6] Gillespie relies on *Spinetti I* asserting that this decision supports her argument that the Agreement's arbitration provision is unenforceable because it requires mandatory arbitration under the AAA, which is prohibitively expensive and would not provide an accessible and affordable forum for Gillespie to vindicate her rights.

fees, regardless of the outcome of the arbitration; and (3) each party shall pay one-half of the compensation to be paid to the arbitrator(s), as well as one-half of the costs relating to the administration of the arbitration proceeding (e.g. room rental, court reporter, etc.)." 240 F.Supp.2d at 352. Further, in order to file a claim with the AAA, the plaintiff in *Spinetti I* was responsible for paying an initial, nonrefundable, filing fee of $2,750.00 and a case filing fee of $1,000. *Id*. at 354. In addition to the filing fees, for merely a one day hearing before an arbitrator (which would not have been sufficient), the plaintiff in *Spinetti I* would have to pay an $1,150.00. *Id*. The Court held that these requirements were unenforceable both because the cost of arbitration would prohibit the plaintiff from effectively asserting her rights, and because the agreement deprived her of her statutory right to recover attorneys fees and costs should she prevail. *Id*. Is so holding, the district court noted that courts have acknowledged that large arbitration costs are directly related to a litigant's ability to vindicate her federal statutory rights in an arbital forum. *Spinetti I*, 240 F.Supp.2d at 353 (citing *Green Tree*, 531 U.S. at 90). Consequently, the district court followed the reasoning in *Green Tree* which suggests that a court adopt a case by case approach in assessing the enforceability of arbitration clauses.

Additionally, the district court considered that *Green Tree* clearly states that the party seeking to invalidate an arbitration agreement on the ground that it would be prohibitively expensive bears the burden of showing this likelihood. *Spinetti I*, 240 F.Supp. 2d at 354. Crucial to the district court's determination was the evidence proffered by the plaintiff in support of her contention that the arbitration process was prohibitively expensive. In particular, the plaintiff submitted the approximate AAA filing fees for her case and the cost for a one day hearing. More importantly, the plaintiff submitted a comprehensive affidavit detailing information concerning her financial status

and inability to pay.[7]  In fact, the district court noted that ". . . had Spinetti failed to tender any information about her financial status, or inability to pay, [the district court] would decline to hold that an individual making $65,000 per year would be unable to pay arbitration costs." *Spinetti I*, 240 F.Supp. at 356, n. 7.  The district court's reasoning and holding was affirmed on appeal..  *See Spinetti*, 324 F.3d 212 (3d Cir. 2003)("*Spinetti II*").

The record in this case is inadequate as compared to the record before the district court in *Spinetti I*.  Although Gillespie has tendered  to the Court a current schedule of the AAA's Initial Filing and Case Service Fees for Commercial Arbitration (Doc. No. 15-5), she has failed to proffer any evidence of her inability to pay such fees.  As to the AAA fees, Gillespie submits that she must pay an initial filing fee between $6,000 and $8,000 depending on the amount of her claim.[8] (Doc.

---

[7] Specifically, the district had before it the following financial information:

> A $3,000 combined cost may seem insignificant, as Lafayatte suggests, in light of Spinetti's previous annual salary of $65,000. Yet, Spinetti was terminated from her employment, and no longer commands a $65,000 a year salary. In fact, she spent the first six months following termination unemployed. *See* Spinetti Affidavit, ¶ 6. Only in May, 2001, was Spinetti able to secure employment. Even so, she received only $1,075.00 per month-or less than $300.00 per week. *Id.,* ¶ 7. Beginning in September of 2001, Spinetti accepted another job which paid $250.00 per week for four weeks and then became straight commission. *Id.* The $250.00 to $300.00 per week salary is insufficient to meet Spinetti's expenses. She testified, by way of affidavit, that her monthly expenses for food and rent total approximately $2,000. *Id.,* ¶ 10. To cover the deficit between salary and expenses, Spinetti has taken cash advances from her credit cards. *Id.* ¶ 9.

*Spinetti I*, 240 F.Supp.2d at 355.

[8] The Court notes that the AAA offers a refund schedule for filing fees.  (Doc. No. 15-5 at 2).  Neither party has indicated how this would apply in this case.

No. 15 at 4, n.2; Doc. No.15-5 at 1.) Gillespie is also responsible for paying a case service fee which would be approximately $2,500 to $3,250 depending on the amount of her claim. (Doc. No. 15 at 4, n.2; Doc. No.15-5 at 1.) Additionally, the arbitration provision contained in the Agreement does not speak specifically to who bears the ultimate responsibility for payment of the filing fees, but states "the [arbitrator's] award shall equally apportion between the parties all costs of the arbitration, including but not limited to all administrative fees and the arbitrator's compensation and expenses, if any." (Docket No. 6-2 at 12.) The Court's analysis is foreclosed at this point as Gillespie has failed to provide the Court with any information concerning her personal financial status and inability to pay. Gillespie, unlike the plaintiff in *Spinetti I*, has not tendered an affidavit or other evidence attesting to her personal financial hardship, *e.g.*, her current salary,[9] living expenses, and any dependents she is responsible for supporting. Given Gillespie's failure to meet her evidentiary burden, the Court is constrained to find that the costs of arbitration are not so prohibitive as to render the arbitration clause unenforceable.[10] *See also Choice*, 2003 WL 22097455,

---

[9] The Court is assuming that Gillespie is currently an agent for Colonial since her complaint does not allege that she was terminated and Colonial's recitation of the facts state that Gillespie has been affiliated with Colonial since she entered into the Agreement on January 1, 2005. (Doc. No. 6; Doc. No. 7 at 1.) Thus, it is reasonable to assume that Gillespie has been receiving a salary by Colonial during the relevant time period.

[10] Plaintiff suggests that meditation or arbitration pursuant to the Court's Alternative Dispute Resolution program is a more affordable alternative to AAA arbitration. (Doc. No. 10 at 11; Doc. No. 15 at 6.) However, the Court finds it unnecessary to consider this contention because Gillespie has failed to prove that AAA mediation is prohibitively expensive. *Query,* taking plaintiff's argument to its conclusion, does the fact that this court has an ADR program render unenforceable any arbitration agreement over a certain amount? In fact, all federal courts offer a congressionally mandated arbitration option that is free to the parties. Should that now be considered in these cases where the enforceability of an arbitration clause is at issue? We think not.

at *12, n.19 (district court declined to conclude that agreement was unenforceable based on prohibitive arbitration costs where plaintiff produced no evidence in support of such contention)); *Dabney v. Option One Mortgage Corp.*, Civ. A. No. 00-5831, 2001 WL 410543, at *3 (E.D. Pa. Apr. 19, 2001)(district court concluded that arbitration agreement was not enforceable because any risk of plaintiff bearing costs was speculative, noting that "to the extent that the Arbitration Agreement requires Plaintiff to pay her own attorney's fees and litigation expenses, such burden is one borne by any litigant in federal court as well.").

Acknowledging that she must satisfy the burden established in *Green Tree*, Gillespie requests that this Court allow her sixty (60) days in which to conduct limited discovery in order to satisfy such burden. In support, Gillespie cites *Blair v. Scott Specialty Gases*, 283 F.3d 595 (3d Cir. 2002). The Court finds that discovery is not warranted here. In *Blair*, the court of appeals was confronted with a challenge to the enforceability of an arbitration agreement based on the inability of the plaintiff to pay for one-half of the arbitration fees. *Id.* at 605. The court of appeals remanded the case for limited discovery on plaintiff's inability to pay for arbitration because the district court's decision to compel arbitration was made prior to the decision in *Green Tree*, and because it had determined that the district court did not fully explore the cost issue. *Id.* at 607-608, 610. In so holding, the court of appeals noted that *Green Tree* established the right of a claimant to invoke discovery procedures in the pre-arbitration proceeding in order to assist the claimant in meeting her burden of showing the likelihood of bearing prohibitive costs. *Id.* at 608-609. Further, the *Blair* court reasoned that "without some discovery, albeit limited to the narrow issue of estimated costs of arbitration and the claimant's ability to pay, it is not clear how a claimant could present information on the costs of arbitration as required by *Green Tree* and how the defendant could meet

its burden to rebut the claimant's allegation that she cannot afford to share the cost." *Id*. Although the plaintiff in *Blair* had submitted an affidavit attesting to her limited financial ability, the plaintiff failed to attach any documents to support her financial figures, such as bank statements and bills, and failed to submit any information concerning the estimated costs of the arbitration. *Id.* at 608.

Blair is distinguishable on it facts from the case at bar and, thus, inapposite. Here, Gillespie is and has been well aware of the requisite burden she must prove pursuant to *Green Tree*. In fact, Gillespie refers to such burden and attaches the *Spinetti I* and *Spinetti II* decisions for this Court's review, both of which extensively discuss the *Green Tree* burden and the evidence necessary for the Court to determine whether arbitration would be prohibitively expensive. Despite having this knowledge, Gillespie only submitted information pertaining to the costs of AAA arbitration and failed to submit any information concerning her financial ability to pay such costs. Unlike *Blair*, here, Gillespie already possesses information as to the AAA filing fees and costs, and she has sole custody of the information regarding her ability to pay, *e.g.*, her current income, expenses, etc., therefore, discovery is not needed. In this Court's estimation, Gillespie has had sufficient time to meet her burden under *Green Tree*, and has failed to provide any reason for the Court to grant her discovery request. Therefore, Gillespie's request for discovery will be denied.

**B.     Whether the Claims are Arbitrable**

Colonial requests this Court to engage in "piecemeal litigation, and determine some of Gillespie's claims, then order Arbitration as to the remaining claims." (Doc. No. 14 at 6.) Although Colonial concedes that technical issues such as exhaustion of remedies and statute of limitations can be determined by an arbitrator, Colonial asks this Court to decide the technical issues in this case thereby making "the initial findings that would have been made during an EEOC proceeding."

(Doc. No. 14 at 5-6.)  In the alternative, if the Court deems piecemeal litigation is inappropriate, Colonial asserts that the entire case should be ordered to arbitration.  (Doc. No. 14 at 6.)  In response, Gillespie maintains that no claims are required to be arbitrated; however, if the Court disagrees, Gillespie argues that only her breach of contract claim is within the scope of the arbitration provision and therefore arbitrable.  (Doc. No. 15 at 3.)

The Court must first determine whether all of Gillespie's alleged claims fall within the scope of the arbitration agreement and, thus, are arbitrable.  The Agreement entered into by Gillespie and Colonial provides "every claim, controversy or dispute arising out of or related to this Agreement, or the breach thereof, . . . shall be settled by binding arbitration . . . ."  (Doc. No. 6-2 at 11.)  Gillespie asserts the following claims: (1) sexual harassment and retaliation under Title VII and the PHRA; (2) breach of contract; (3) battery-negligent entrustment; and (4) battery-vicarious liability.  Gillespie does not dispute that her breach of contract claim is arbitrable. Hence, the Court will focus on the arbitrability of her discrimination and tort claims.

In construing the scope of an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *AT & T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)(quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  This presumption of arbitrability is particularly applicable where the arbitration clause at issue is broad.  *Id*. at 650. (finding a clause providing for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder" to be broad).

Courts have determined that an arbitration clause that uses "language such as 'any dispute arising out of or relates to' the agreement, or disputes that are 'in connection with' the agreement is characterized as broad." *Hearon v. Astrazeneca*, Civ. A. No. 02-3189, 2003 WL 21250640, at *5 (E.D. Pa. Mar. 24, 2003)(court determined that plaintiff's Title VII, PHRA and breach of contract claims were arbitrable); *see also TMG Health Inc., Unitedhealth Group, Inc.*, Civ. A. No. 07-115, 2007 WL 1258133, at *1 (E.D. Pa. Apr. 27, 2007)(language of an arbitration clause providing that "any controversy, claim or dispute arising out of or relating" is of the broadest nature)(citing *Medtronic AVE Inc. v. Cordis Corp.*, 100 Fed. Appx. 865, 868-869 (3d Cir. 2004)(when an arbitration clause refers to matter "arising from" an agreement, it overwhelmingly suggests that a given dispute is arbitrable)).

The Court finds that the arbitration clause at issue is broad and encompasses each of Gillespie's claims. As to Gillespie's discrimination claims, the United States Supreme Court has held that with a limited exception (not applicable here), the FAA governs employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)(holding that in the employment context "only contract of employment of transportation workers" are exempted from the FAA's coverage). Although the Agreement here does not specifically state that it applies to employment discrimination claims related to the Agreement and/or relationship with Colonial, courts have found that a broadly worded arbitration clause, such as the one in this case, governs disputes beyond those that involve the terms of the contract in which the arbitration clause appears. *Hearon*, 2003 WL 21250640, at *5 (citing *Gateson v. ALSK-Bank N.V./CGER-Banque S.A.*, No. 94 Civ. 5849, 1995 WL 387720, *3-5 (S.D .N.Y. June 29, 1995) (holding that an arbitration provision in an employment agreement which required that "[a]ny controversy arising out of or relating to" the agreement extended to

plaintiff's statutory discrimination claims not specifically addressed in the employment agreement); *Hull v. NCR Corp.,* 826 F.Supp. 303, 305 (E.D.Mo.1993) (finding that an employment contract requiring arbitration of "[a]ny controversy or claim arising out of relating to" the contract must be liberally construed to encompass statutory employment discrimination claims); *Labib v. Younan,* 755 F.Supp. 125, 128-129 (D.N.J.1991) (finding that a plaintiff's claims for breaches of oral agreements and fair dealing, the tort of fraudulent inducement, and statutory violations were all encompassed by the parties' broadly-worded employment contract, which mandated arbitration for "[a]ny controversies or disagreements arising out of, or relating to this Agreement or the breach thereof"); *Cara's Notions, Inc. v. Hallmark Cards, Inc.,* 140 F.3d 566, 569-571 (4th Cir.1998) (finding that an account agreement which mandated arbitration for "[a]ny controversy or claim arising out of or relating to ... any aspect of the relationship" between the parties required arbitration of all conflicts between the parties, and not merely disputes regarding the account agreement); *Cash Converters USA, Inc. v. Burns,* Civ. A. No. 99-0146, 1999 WL 98345, *6-7 (N.D.Ill. Feb. 19, 1999) (finding that an arbitration clause in a contract which required arbitration of all disputes arising out of the parties' relationship encompassed claims beyond the terms of the contract in which the arbitration clause appeared).

In the instant case, the breadth of the language of the arbitration clause establishes that it was intended to apply to any claim, controversy or dispute related to Gillespie's business relationship with Colonial, and not merely to disputes relating to specific provision of the Agreement or breach thereof. *Hearon*, 2003 WL 21250640, at *5. Consequently, the Court finds that the phrase "relating to" extends beyond disputes arising under the Agreement. Accordingly, Gillespie's claim of sexual harassment and retaliation in violation of her Agreement with Colonial is a claim that "relates to"

the Agreement.[11]

Further, Gillespie's claim of sexual harassment and retaliation is inextricably connected to her breach of contract and tort claims because these claims arise from the allegedly wrongful treatment of Gillespie during her business relationship with Colonial.[12] Although the theory of liability may be different, the evidence on all of Gillespie's claims overlap, and it would make little sense to try to Gillespie's state law claims and federal claims before different forums. Moreover, even assuming, *arguendo*, that the scope of the arbitration clause is ambiguous, federal law favors arbitration and all doubts are to be resolved in favor of arbitration. Such presumption of arbitrability is assumed "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech.*, 475 U.S. at 650. Here, the breadth of the arbitration clause is sufficiently wide that the arbitration clause is certainly

---

[11] The Court finds that this conclusion is consistent with South Carolina law. South Carolina law, like federal law, favors arbitration of disputes. *Zabinski v. Bright Acres Associates*, 553 S.E. 2d 110, 118 (S.C. 2001). Further, "a broadly-worded arbitration clause applies to disputes that arise under the governing contract when a "significant relationship" exists between the asserted claims and the contract in which the arbitration clause is contained." *Id*. at 119 (citing *Long v. Silver*, 248 F.3d 309 (4th Cir. 2001). In addition, in determining whether tort claims are arbitrable, the focus should be on the factual allegations contained in the petition rather than on the legal causes of action asserted. *Id*. at 119, n.4. If the tort and contract claims are so interwoven, both are arbitrable. *Id*. Here, the Court has determined that the arbitration clause is broad and the facts underlying all of Gillespie's claims are interwoven in that the claims are all related to her working environment and events allegedly occurred during her work relationship in violation of the Agreement. Moreover, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration since the Court cannot say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute. *Id*. at 118.

[12] Although the Court declines to determine whether the current Agreement amounts to one for employment, the parties appear to concede that it governs the business relationship, however termed, between Colonial and Gillespie.

susceptible to an interpretation that a dispute concerning sexual harassment and retaliation, and claims related thereto, are included in "every claim, controversy or dispute arising out of or related to this Agreement, or the breach thereof . . . ."

To this end, the Court also finds that piecemeal litigation of this matter is inappropriate. "'Procedural questions' which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for the arbitrator to decide." *Hosam v. Dean Witter Reynolds*, *Inc.*, 537 U.S. 79, 82 (2002)(citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). Considering that the Court has determined that all of Gillespie's claims are arbitrable, the Court declines to decide some of Gillespie's claims at this juncture, where it is clear that the procedural arguments Colonial raises associated with these claims can be properly determined by an arbitrator. In fact, Colonial concedes that "the issues related to exhaustion of remedies, statute of limitations, and similar questions may be appropriately addressed and determined by an arbitrator." (Doc. No. 14 at 5.)

### C.    Waiver

As previously referenced, in *Howsam v. Dean Witter Reynolds*, *Inc*., the United States Supreme Court determined that"[p]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for the arbitrator to decide." 537 U.S. at 82 (internal quotations omitted).   "[T]he presumption is that the arbitrator should decide allegation[s] of waiver, delay or a like defense to arbitrability.  *Id*. at 84.   However, the Third Circuit, has distinguished *Howsam*'s general prohibition on court consideration of issues of waiver and delay, noting that the *[Howsam]* Court  was referring only to waiver, delay, or the like defenses to arbitrability arising from non-compliance with contractual conditions precedent to arbitration .

. . and not to claims of waiver based on active litigation in court." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007). The Third Circuit was persuaded by the reasoning in *Marie v. Allied Home Mtg.*, 402 F.3d 1, 13 (1st Cir. 2005), in which the First Circuit concluded that "where the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration or stay proceedings, then the district court has the power to control the course of proceedings before it and to correct abuses of these proceedings."

Here, both parties raise the issue of waiver. Colonial maintains that by filing suit in federal court, Gillespie failed to adhere to the terms of the Agreement, *e.g.*, mandatory arbitration, and therefore requests that her federal lawsuit be dismissed. (Doc. No. 7 at 9.) To the contrary, Gillespie asserts that Colonial has breached the Agreement and waived the arbitration provision by filing its Motion to Dismiss and requesting that the Court dismiss all or some of her claims. (Doc. No. 10 at 9.) Lastly, both parties raise negotiation as a condition precedent to arbitration, maintaining that the opposing party failed to engage in such negotiation, and hence, breached and/or waived arbitration. (Doc. No.12 at 4; Doc. No. 15 at 2.)

The Court finds the parties' waiver arguments to be meritless. First, the Court interprets Colonial's argument that Gillespie failed to adhere to the terms of the Agreement by filing in federal court rather than pursuing arbitration to be akin to violating a contractual condition precedent to the Agreement. Accordingly, the Court declines to delve into this issue because "waiver, delay, or the like defenses arising from non-compliance with contractual conditions precedent to arbitration" are issues for the arbitrator, not the Court. *Ehleiter*, 482 F.3d at 219. Similarly, for the same reason, the Court declines to determine whether either parties' failure to negotiate, a condition precedent contained in the arbitration provision, was a breach and/or waiver of the Agreement. *Id.*

Second, to the extent that Gillespie's argument pertaining to Colonial's filing of its Motion to Dismiss can be construed as litigation, the Court does not find that this conduct amounts to a waiver of arbitration. The Court notes that Gillespie has failed to cite any case law supporting its argument. Consistent with the strong federal preference for arbitration in federal courts, waiver "is not to be lightly inferred." *Painewebber Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir. 1995). Thus, "waiver will normally only be found 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *Faragalli*, 61 F.3d at 1068-69 (quoting *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir. 1975)).

Gillespie's waiver argument does not prevent this Court from compelling arbitration. In this Court's estimation, Colonial had the right to attempt to dismiss some or all of Gillespie's claims or to pursue arbitration of said claims. The fact that Colonial emphasized dismissal in the first instance in no way serves as a waiver of arbitration. Further, Colonial filed its Motion to Dismiss, or in the Alternative Motion to Compel Arbitration, approximately two months after Gillespie initiated this action and the parties have not engaged in discovery. (Doc. No. 1; Doc. No. 6.) Thus, there are no facts present to constitute a waiver of arbitration in this matter.

**D.     Stay or Dismiss Action**

The FAA provides that if a court is satisfied that the issue before it is referable to arbitration, upon application of one of the parties, a court shall stay its proceedings until such arbitration has been held in accordance with the terms of the agreement. 9 U.S.C. § 3. To the extent Colonial requests a dismissal of the Gillespie's case, precedent in this circuit mandates a stay because Gillespie has requested that this case be stayed, rather than dismissed, if ordered to arbitration. (Doc. No. 15 at 6.) *See Azur v. MBNA Corp.*, Civ. A. No. 06-1047, 2007 WL 1656255, at *3 (citing

*Lloyd* v. *Hovensa, LLC,* 369 F.3d 263, 269 (3d Cir.2004) ("a district court [has] no discretion to dismiss a case where one of the parties applies for a stay pending arbitration").

## IV.     <u>CONCLUSION</u>

In accordance with pertinent case and statutory law, the Court finds that the arbitration clause at issue is valid and enforceable and that Gillespie's claims are arbitrable.  As such, the parties' disputes shall be submitted to arbitration.  Therefore, for the reasons set forth above, the Court will deny Defendant's Motion to Dismiss, but grant its alternative Motion to Compel Arbitration.  An appropriate order will be entered.


By the Court:

March 30, 2009

LISA PUPO LENIHAN
United States Magistrate Judge

cc:     All Counsel of Record
        *Via Electronic Mail*