IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DIANA LYNN GILLESPIE, | ) | |
|---|---|---|
| Plaintiff, | ) ) | Civil Action No. 08-689 |
| v. | ) ) | Magistrate Judge Lisa Pupo Lenihan |
| COLONIAL LIFE & ACCIDENT INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

## **MEMORANDUM AND ORDER**

LENIHAN, M. J.

On April 28, 2009, the Court granted Plaintiff's Motion for Reconsideration and ordered the parties to file supplemental briefing on Defendant's alternative motion to compel arbitration. The parties have submitted their supplemental briefs and supporting documents and the Court has fully considered their arguments and evidence.[1]

Plaintiff opposes Defendant's motion to compel arbitration arguing, in essence, that the arbitration agreement should not be enforced because the high costs of arbitration would preclude her from effectively vindicating her federal statutory rights in the arbitral forum. In support of her argument, Plaintiff has submitted two affidavits, along with several exhibits allegedly supporting her first quarter 2009 income, foreclosure of her former marital home, and custody order; and an affidavit of a paralegal employed by Plaintiff's counsel attesting to the fees/costs of the American

---

[1] As the parties have submitted evidence in support of their arguments outside the pleadings, a summary judgment standard must be applied here.

Arbitration Association ("AAA").[2] Plaintiff submits that she should be allowed to continue her lawsuit before this Court because the arbitration agreement, as drafted, is largely unenforceable, and because Defendant, having refused to negotiate as a prerequisite to arbitration, should not receive the benefit of the selective enforcement or rewriting of the District General Agent Agreement ("DGA") that results in an order compelling AAA arbitration under the Commercial Arbitration Rules. Alternatively, Plaintiff suggests that if the Court believes mediation or arbitration is required, that arbitration under the Western District's ADR program, W.D.L.R. 16.2, be ordered as this would be a more economical forum yet still accommodate Defendant's wish to have the claims resolved by arbitration. Finally, Plaintiff suggests that if the Court compels AAA arbitration, that it be done at Defendant's expense.

In response, Defendant argues that the evidence proffered by Plaintiff in support of her alleged financial inability to pay for arbitration is insufficient. In particular, Defendant argues that without documentation of Plaintiff's actual income or indebtedness, this Court cannot determine that Plaintiff has sufficiently supported her financial inability to afford AAA arbitration. Moreover, Defendant posits that Plaintiff's statement that she owes potentially $50,000 in tax liability to the IRS is unsubstantiated. Defendant argues that Plaintiff's affidavits, which contain self-serving statements without any supporting documentation, are insufficient to factually support her assertions related to her own financial ability to afford AAA arbitration, as required by the summary judgment standard, citing *Zumpano v. Omnipoint Communications,* Civ.A. No. 00-CV-595, 2001 U.S. Dist.

---

[2]Plaintiff also advances another argument in opposing the motion to compel arbitration–that Defendant's refusal to negotiate precludes arbitration. This argument was fully briefed with regard to Defendant's motion to dismiss (Doc. No. 6), and was already considered and rejected by the Court. *See* Opinion dated March 30, 2009 (Doc. 17) at19-20. Neither the facts nor the law has changed since the Court's ruling. Therefore, the Court declines to reconsider or change its previous ruling on this argument.

LEXIS 376, * 27 (E.D.Pa. Jan. 18, 2001). Defendant further submits that the mortgage foreclosure action is no longer active and therefore, Plaintiff has not proven financial responsibility related to that action.

Defendant further contends that Plaintiff has failed to explain the basis of her alleged damages and, in any event, her potential damages under the causes of action asserted in her complaint are unlikely to reach the amount necessary to generate an AAA filing fee of $8,000, based on the relevant law and available undisputed facts. Defendant submits that under the DGA, all costs of arbitration are to be equally apportioned between the parties, and therefore, Plaintiff's calculations regarding the costs of arbitration attributable to her are inaccurate. In support of its arguments, Defendant proffers evidence regarding the status of the foreclosure of the mortgage on Plaintiff's former marital home; and 1099-MISC forms issued to Plaintiff for 2006 and 2007.

Subsequently, Plaintiff filed a reply brief and rebuttal evidence consisting of the docket from Wayne County Common Pleas Court in Wooster, Ohio, and other papers filed therein showing an updated status of the foreclosure action; three (3) 1099-MISC forms for 2008 issued to Plaintiff; and a statement from American Heritage Life Insurance Company ("American Heritage") showing commissions earned in 2009 through May 31, 2009.

The outcome here is governed by the Supreme Court's decision in *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79 (2000), and the court of appeals decision in *Spinetti v. Service Corp. Int'l,* 324 F.3d 212 (3d Cir. 2003). Under *Green Tree,* a party seeking to invalidate an arbitration agreement on the basis that arbitration would be prohibitively expensive, bears the burden of proving the likelihood of incurring such costs. 531 U.S. at 92. However, the Supreme Court refrained from providing any guidance as to how detailed the showing of prohibitive expenses must

be to support a finding that the agreement to arbitrate is invalid, since the plaintiff in *Green Tree* had not presented any evidence at all regarding the likelihood of incurring such costs. *Id.* Nonetheless, the court of appeals in *Spinetti* did note that at least two other courts of appeals have attempted to delineate such a standard. For example, the *Spinetti* court noted that the U.S. Court of Appeals for the Sixth Circuit held that "potential litigants must be given the opportunity to demonstrate that potential costs are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights[.]" 324 F.3d at 217 (citing *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 660 (6th Cir. 2003)). The court of appeals in *Spinetti* also noted the test employed by the Fourth Circuit: "the appropriate inquiry is one that focuses on the claimant's ability to pay the arbitration fees and costs and whether these are substantial enough to deter the bringing of claims[.]" *Id.* (citing *Bradford v. Rockwell Semiconductor Sys., Inc.,* 238 F.3d 549, 556 (4th Cir. 2001)).

In *Spinetti*, the court of appeals noted that the district court embarked on a fact-specific inquiry to determine whether the plaintiff had met her burden of demonstrating that the costs associated with arbitrating her claims were prohibitively expensive thereby denying her the opportunity to vindicate her statutory rights. 324 F.3d at 216. The evidence presented by Spinetti, that the district court found adequate to show that the costs associated with arbitrating her claims were prohibitive, included the following evidence: (1) AAA fees that Spinetti was required to pay, which included an initial, non-refundable filing fee of $500, an additional filing fee of $2,750, a case-filing fee of $1,000, an additional charge of $150 for each day of the hearing, and one-half of the cost of an arbitrator; (2) a mid-range arbitrator in Western Pennsylvania charges an hourly fee of $250 with a $2,000 per day minimum; (3) an annual salary of $65,000 while employed by

4

defendant and six months of unemployment following her termination; and (4) earnings of less than $300 per week from new employment with monthly expenses totaling $2,000, and using credit cards to get cash advances to make up the difference. *Id.* at 217 (citing D. Ct. Op. at 10 (*reported at* 240 F.Supp.2d 350, 354-55 (W.D.Pa. 2001)). The district court observed that a person who was living off of credit card advances could hardly afford to pay the costs associated with arbitration. 240 F.Supp. 2d at 355. The district court noted, however, that "had Spinetti failed to tender any information about her financial status, or inability to pay, [it] would [have] decline[d] to hold that an individual making $65,000 per year would be unable to pay arbitration costs." *Id.* at 355 n. 7 (citing *Cline v. H.E. Butt Grocery Co.,* 79 F.Supp. 2d 730, 733 (S.D. Tex. 1999)).

In the instant matter, although Plaintiff has produced some evidence in support of her financial inability to afford the costs of arbitration, it falls short of what the plaintiff produced in *Spinetti*. Thus, the question here is whether Plaintiff's evidence is sufficient to meet her burden under *Green Tree*. Based on the parties' submissions, the Court concludes that Plaintiff has failed to satisfy her burden.

The DGA contains the following provision regarding the allocation of arbitration costs:

> The arbitrator shall be authorized to award such relief as is allowed by law. The award shall equally apportion between the parties all costs of arbitration, including but not limited to, all administrative fees and the arbitrator's compensation and expenses, if any. However, except as provided elsewhere in this Agreement, each party shall be responsible for its own attorney's fees incurred during the course of the arbitration, as well as the costs of any witnesses or other evidence such party produces or causes to be produced. . . .

DGA, Section XIV (Ex. A to Def.'s Mot. to Dismiss (Doc. 6-2)). Although the DGA indicates that the costs of arbitration are to be apportioned equally between the parties in the arbitrator's award,

5

it does not indicate who is responsible for paying the costs when they are due and payable. The Commercial Arbitration Rules indicate that the initial filing fee is payable in full by the filing party when the claim is filed. *See* Ex. D to Pl.'s Br. (Doc. 22-5). The case service fee is payable in advance at the time the first hearing is scheduled. *Id.* Therefore, pursuant to the terms of the DGA and the Commercial Arbitration Rules, it appears that Plaintiff would be responsible for paying 100% of the filing fee at the initiation of arbitration, but would later recoup 50% of this fee.

Here, Plaintiff has proffered evidence as to the arbitration fees charged by the AAA. According to the affidavit submitted by Angela DiSanti and the attached fee schedule from the AAA as of September 1, 2007, downloaded by Ms. DiSanti from the AAA website (*see* Pl.'s Ex. D), the filing fees charged by the AAA vary depending on the amount of the claim. The stated initial filing fee ranges from $4,250 for claims with a value of over $300,000 to $500,000, to $8,000 for claims with a value of over $1,000,000 to $5,000,000. In addition, the stated case service fee ranges from $1,750 to $3,250, depending on the value of the claim. Plaintiff contends that the amount of her claims falls in the $1,000,000 to $5,000,000 range, thus equating to an initial filing fee of $8,000, plus a case service fee of $3,250, for a total of $11,250. In addition, Plaintiff asserts that the parties are responsible for the arbitrator's compensation, which ranges between $300 and $900 per hour.[3]

---

[3]Defendant disputes that the value of Plaintiff's claims falls in the $1,000,000 to $5,000,000 range, based on (1) Plaintiff's failure to provide any explanation or support for this valuation, and (2) its argument that legally, Plaintiff's employment discrimination claims are barred based on statute of limitations and/or failure to exhaust administrative remedies grounds, and because she is not an employee, but an independent contractor. Thus, Defendant maintains that at most, the value of Plaintiff's claims falls in the $300,000 to $500,000 range, resulting in combined filing and service fees of $6,000, which would be apportioned equally between the parties. While the Court tends to agree with Defendant that Plaintiff does not adequately explain the basis for her claimed damages, resolution of this issue is not required because, as explained below, the Court finds Plaintiff has failed to show that she cannot afford to pay either the higher or lower range of arbitration fees.

(DiSanti Aff., ¶ 7.)

Based on this evidence, it appears that Plaintiff would be required to pay between $2,125 and $4,000 to bring her claims in arbitration, as opposed to the $350 filing fee to file a complaint in federal court. Plaintiff would also be responsible for one-half of the case service fee (between $875 and $1,625), as well as one-half of the arbitrator's compensation, which would run approximately $1,200 per day.[4] In addition, the provision in the DGA that each party is to be responsible for the costs of any witnesses or other evidence, is of no moment here as this would be the same if the parties proceeded to litigate their dispute in federal court.

Turning next to Plaintiff's income, the evidence shows that in May of 2006, when the alleged sexual harassment, breach of contract, and battery occurred, Plaintiff received income from the Defendant in the amount of $132,816.83.[5] (Ex. B to Def.'s Reply to Pl.'s Br. Opposing Arbitration (Doc. 24-3).) In 2007, Plaintiff received $149,338.78 in income from Defendant. (*Id.*) In 2008, the year she commenced this litigation, Plaintiff received income totaling $53,688.91 from three different insurance companies/brokers.[6] (Ex. F to Pl.'s Reply Br. & Rebuttal Evid. (Doc. 27-3).) As of May 31, 2009, Plaintiff received income of $13,094.47 from Defendant (Doc. 22-4), and

---

[4]Based on an a fee of $300 an hour, which is in line with the average hourly rate charged by neutrals registered with the Western District ADR Program, *see* http://www.pawd.uscourts.gov/pages/adr.htm, an eight-hour day would run $2,400, with each party paying fifty percent.

[5]As per 2006 Form 1099-MISC, Box 7–Nonemployee Compensation.

[6]In 2008, Plaintiff received 1099-MISC forms from: (1) Defendant showing income of $50,582.01; (2) Brokers National Life showing income of $2,936.22; and (3) American Heritage Life Insurance Company ("American Heritage") showing income of $170.68. (Doc. 27-3.)

7

$14.26 from American Heritage (Doc. 27-3).[7] Thus, Plaintiff's DGA relationship with Defendant did not terminate and she continued to earn six-figure commissions for the two years after the alleged misconduct, unlike the plaintiff in *Spinetti,* who was terminated and had no income for six months immediately thereafter, and earned only $300 per week in her new job and had to take cash advances on her credit cards to pay some of her expenses.[8]

Plaintiff attempts to get around this by arguing that she *currently* is unable to afford the costs of arbitration. However, at least one district court has suggested that the plaintiff's financial ability should be determined at the time the incident giving rise to the claim occurred or at the time arbitration could have been filed. *See Zumpano,* 2001 U.S. Dist. LEXIS 376, at * 29 (rejecting as insufficient statements in plaintiff's affidavit describing his current financial condition and not his financial condition at the time the contract was formed or during the intervening time when he was eligible to file for arbitration). The Court agrees with this reasoning and therefore finds Plaintiff's argument unavailing.

Plaintiff further attempts to support her alleged inability to afford arbitration by stating that she is solely responsible for paying the mortgage on her current home, where she lives with her two teenaged children, and that she is financially obligated to support one of her children pursuant to the

---

[7] It appears that the commissions earned as of May 31, 2009 from American Heritage include only two months–April and May of 2009–as Plaintiff's contract year runs from April 14th. (Doc. 27-3.)

[8] Similarly, the Court finds that the cases cited by Plaintiff at page four of her brief opposing arbitration (Doc. 22) do not support her contention that she has shown an inability to afford AAA arbitration. None of the plaintiffs in those cases made six-figure incomes like Gillespie. In addition, it appears that the district courts in some of those cases were content to accept conclusory statements regarding the plaintiffs' financial inability to pay for arbitration. However, in this Circuit, conclusory statements in an affidavit without factual support are inadequate to satisfy a party's burden on summary judgment. *See Blair v. Scott Specialty Gases,* 283 F.3d 595, 608 (3d Cir. 2002) (citation omitted).

divorce decree, which she attached to her affidavit. However, Plaintiff fails to indicate the amount of such monthly financial commitments. In addition, Plaintiff states that the mortgage on her former marital home is in foreclosure and that she owes the IRS federal income taxes in an amount that the IRS contends exceeds $50,000 for 2006, 2007, and 2008. (Pl.'s Aff., ¶¶ 9-10; Pl.'s Supp. Aff., ¶¶ 2, 6.)[9] Although Plaintiff has provided evidence that the foreclosure procedure against her former marital home was reinstated several days before Defendant filed its supplemental brief, she fails to show that she has any financial responsibility for the mortgage on the property being foreclosed.[10] Plaintiff also fails to provide any documentation regarding her potential tax liability with the IRS.

Moreover, Plaintiff's statements in her affidavit regarding the mortgage foreclosure on her former marital home and her alleged tax liability are conclusory and not supported by the facts in evidence. The court of appeals has held that "[i]n order to satisfy the standard for summary judgment 'the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate to satisfy the

---

[9]It is not clear as to whether the alleged IRS tax liability pertains to 2006, 2007 and/or 2008, as Plaintiff refers to the 2006 and 2007 tax years in her first affidavit, and then references 2007 and 2008 in her supplemental affidavit.

[10]For example, the Marriage Separation, Memorandum of Understanding, referenced in paragraph one of the Magistrate's Order - Decree of Divorce (Doc. 22-4), sets forth the division of marital property and debt and, presumably, addresses the financial responsibility for the mortgage on the former marital home. Yet, the Marriage Separation, Memorandum of Understanding is not attached to the divorce decree filed with Plaintiff's affidavit. Nothing in the Magistrate's Order - Decree of Divorce indicates that Plaintiff is responsible for the mortgage debt on her former marital home. Indeed, the Complaints in Foreclosure attached to Plaintiff's briefs show that the promissory note on the former marital home was executed by Kenneth J. Gillispie, her former spouse, and that judgment is sought solely against Kenneth Gillespie. *See* Compl. in Foreclosure, 08-CV-0732 (Ct.Com.Pl. Wayne Co., OH) (Doc. 22-4) ("2008 Foreclosure Action") at ¶ 1 & ad damnum cl.; Compl. in Foreclosure, 09-CV-0435 (Ct.Com.Pl. Wayne Co., OH) (Doc. 27-2) ("2009 Foreclosure Action") at ¶ 1 & ad damnum cl. Plaintiff is named as a defendant in the foreclosure actions merely because she may have or claim some interest in the real property. *See* 2008 Foreclosure Action at ¶ 5; 2009 Foreclosure Action at ¶ 5.

9

movant [or non-movant]'s burden.'" *Blair v. Scott Specialty Gases,* 283 F.3d 595, 608 (3d Cir. 2002) (quoting *Maldonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir. 1985)). In *Blair,* the plaintiff stated in her affidavit that she could not afford to pay the arbitrator's fees, and set forth the amounts of her assets, monthly income, debt, and monthly bills, which indicated that her monthly debt exceeded her income by $182, and her debt exceeded her assets by $57,000. *Id.* Although district court in *Blair* rejected the plaintiff's affidavit as inadequate because she failed to attach any documents to support her figures, the court of appeals appeared to give some credence to the factual statements in plaintiff's affidavit regarding her income and expenses, even though unsupported by documentary evidence. Instead, the court of appeals took issue with the plaintiff's failure to provide *any* information regarding the estimated cost of arbitration, and remanded the case for further factual development solely on the cost issue, in light of the Supreme Court's recent opinion in *Green Tree*. *Blair,* 283 F.3d at 610.

In the case at bar, the Court concludes that from the factual statements in Plaintiff's two affidavits and supporting exhibits and other documents, she has failed to meet of her burden of demonstrating that she was unable to afford to arbitrate her claims between May of 2006 and May of 2008. As to Plaintiff's financial ability, Plaintiff offers mostly conclusory, unsupported statements, such as "I do not have, cannot borrow and cannot otherwise afford the AAA initial filing fee of $8,000 and case service fee of $3,250, which are based on the amount of my damages[,]" and "[a]t no time in 2008 or subsequently did I have, could I borrow and or could I otherwise afford the AAA's initial filing fee of $8,000 and case service fee of $3,250 . . .." Gillespie Aff., ¶¶ 3-4 (Doc. 22-3). Other than the 1099 MISC forms showing her 2008 income, and compensation/commission statements showing 2009 income to date, Plaintiff has failed to provide any factual statements, let

10

alone any documentation in support thereof, to show that from May 2006 to May 2008, her net income after her expenses/debts was such that she was unable to afford the costs of arbitration. Moreover, Plaintiff's affidavits fall short of the factual information contained in the affidavits offered by plaintiffs in *Blair* and *Spinetti*, which the district courts found adequate to satisfy their burden under *Green Tree*. Here, despite having two opportunities to provide information to support her claimed inability to afford arbitration, Plaintiff has failed to satisfy her burden.

The DGA clearly states that all matters arising under the Agreement shall be arbitrated, and Plaintiff was earning six figures at the time arbitration could have been commenced. Therefore, Plaintiff was clearly earning significant income to be able to afford the costs of AAA arbitration between May 2006 and May 2008. Having waited until her income had diminished to commence this lawsuit, Plaintiff cannot now claim that the costs of arbitration preclude her from vindicating her statutory rights in the arbitral forum, especially considering that it is very questionable whether Plaintiff even has any statutory rights to pursue.

Although Plaintiff has failed to demonstrate a financial inability to pay the costs of arbitration in the two year period following the alleged misconduct, the Court is not unsympathetic to Plaintiff's current financial situation. Moreover, in light of the arbitration clause in the DGA, which specifically provides for the equal apportionment of the arbitration costs (other than attorneys' fees) in the arbitrator's award, the Court sees no reason why the arbitration costs cannot be borne equally by the parties at the time such costs are incurred, as opposed to having Plaintiff pay one hundred percent of the filing and service fees and waiting until after the arbitrator's award to get reimbursed for Defendant's share. Therefore, the Court will order each party to pay fifty percent of the AAA arbitration costs, including the filing and service fees, at the time said costs/fees become

due and payable.

In summary, the Court concludes that its order dated March 30, 2009 (Doc. 18) granting Defendant's alternative Motion to Compel Arbitration is supported by the record evidence and applicable law, and therefore, declines Plaintiff's invitation to vacate or modify said order. Accordingly, the Court enters the following Order:

**AND NOW,** this 30th day of June, 2009, **IT IS HEREBY ORDERED** that the Order dated March 30, 2009 (Doc. 18) remains in full force and effect, with the additional direction that the parties shall each pay fifty percent of the AAA arbitration costs, including the filing and service fees, at the time said costs/fees become due and payable.

By the Court:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc: All Counsel of Record
*Via Electronic Mail*